Ronald KELLY and Patrice
Kelly, h/w, Appellee

v.

Michael SIUMA, Marie Siuma, Joseph
Dittmar, Inc., d/b/a/ Princeton Tavern,
BBK Tavern, Inc., d/b/a the Princeton
Tavern, the New Princeton Tavern,
Inc.,

Appeal of BBK, Inc., d/b/a
the Princeton Tavern.

Superior Court of Pennsylvania.

Argued Oct. 4, 2011.

Filed Nov. 3, 2011.

Joseph D. Deal, Cherry Hill, N.J., for BBK, INC., appellant.

Steven M. Mezrow, Philadelphia, for Kelly, appellee. (Submitted).

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., and GANTMAN, JJ.

OPINION BY STEVENS, P.J.:

This is an appeal from the December 9, 2010 order entered in the Court of Common Pleas of Philadelphia County denying Appellant BBK, Inc.'s, d/b/a the Princeton Tavern (hereinafter BBK, Inc.), petition to open the default judgment entered in favor of Appellees Ronald and Patricia Kelly (hereinafter collectively the Kellys). We affirm.

The relevant facts and procedural history are as follows: On December 18, 2009, the Kellys, who are husband and wife, filed a civil complaint against numerous defendants[1] averring that, on May 23, 2007, Michael Siuma, while driving under the influence of alcohol,[2] collided with the Kellys' vehicle, thus seriously injuring the driver, Mr. Kelly. The Kellys averred that, prior to driving, Mr. Siuma consumed alcohol at the Princeton Tavern and, in fact, he was served alcohol after he was visibly intoxicated. The Kellys presented negligence claims against Mr. Siuma with regard to his operation of the motor vehicle, negligent entrustment claims with regard to Ms. Siuma, and claims under "the Dram Shop Act"[3] with regard to all remaining defendants, including BBK, Inc. Additionally, the Kellys sought damages due to Mrs. Kelly's loss of consortium.

On February 16, 2010, Mr. and Ms. Siuma filed an answer with new matter, in response to which the Kellys filed an answer. Having received no answer with regard to the remaining defendants, including BBK, Inc., on August 4, 2010, the Kellys provided an Important Notice of Intent to Enter Default Judgment against them. On August 25, 2010, the Kellys filed praecipes to enter judgment by default against BBK, Inc., the New Princeton Tavern, Inc., and Joseph Dittmar, Inc., d/b/a Princeton Tavern.

On October 8, 2010, BBK, Inc. filed a petition to open the default judgment, as well as a supporting memorandum of law. In its petition to open, BBK, Inc. averred, in relevant part, the following:

7. [BBK, Inc.] specifically denies serving alcoholic beverages to Michael Siuma while visibly intoxicated on or about May 23, 2007.

---

1. The defendants included Michael Siuma, Marie Siuma, Joseph Dittmar, Inc., d/b/a Princeton Tavern, the New Princeton Tavern, Inc., and BBK, Inc. As will be discussed further *infra*, the Kellys averred Mr. Siuma operated a vehicle with the permission of the vehicle's owner, Ms. Siuma, and all other defendants owned and operated a tavern. For purposes of this appeal, it is important to note that the complaint was served on BBK, Inc. on December 22, 2009.

2. The certified record reveals that, on October 29, 2007, Mr. Siuma pled guilty to 75 Pa. C.S.A. § 3802(b), driving while under the influence (BAC .10–.16), which was his second offense, and he was sentenced to five days to six months in prison.

3. 47 P.S. §§ 4-493, 4-497.

8. [BBK, Inc.] presented plaintiffs' Complaint to David Lehman, Esquire with the understanding that he would assist them in this matter.

9. Mr. Lehman corresponded and/or spoke with plaintiffs' counsel regarding his role in the case. Mr. Lehman requested, and counsel for plaintiff[s] agreed, not to file a default judgment while he sought to obtain insurance coverage for [BBK, Inc.].

10. On or about August 25, 2010, plaintiffs filed a Praecipe for Entry of Default Judgment.

11. On September 14, 2010, twenty days after the Entry of Default Judgment, counsel for plaintiffs faxed to Carmen Corp., the insurance broker for [BBK, Inc.], a filed copy of the Complaint in this matter. Counsel did not advise the Carmen Corp. that a default judgment had been entered.

12. On or about September 15, 2010, the Carmen Corp. forwarded the plaintiffs' Complaint to RCA Insurance Group, the third party administrator for State National Insurance Company, Inc., the insurance company for [BBK, Inc.]. Thereafter, RCA Insurance Group assigned the defense of [BBK, Inc.] to the undersigned, [Joseph D. Deal, Esquire].

13. On September 23, 2010, while beginning the process of opening a file on behalf of [BBK, Inc.], [Attorney Deal] pulled a copy of the Civil Docket Report and discovered the entry of the default judgment against [BBK, Inc.]. [Attorney Deal] immediately called Gregory Kowalski, Esquire, the attorney who sent the Complaint to the Carmen Corp., to advise him of [Attorney Deal's] assignment and asked if he would stipulate to vacate the default judgment. Mr. Kowalski advised that the decision on this issue would have to be made by Michael O. Pansini, Esquire. He further advised that Mr. Pansini was in trial and said that he would have him call [Attorney Deal].

14. On September 24, 2010, [Attorney Deal] sent a letter to Mr. Kowalski confirming [the] conversation, including [Attorney Deal's] request for a Stipulation to Vacate the Default Judgment, and asking that he have Mr. Pansini call [him] to discuss this matter as soon as possible.

15. [Attorney Deal] followed the September 24, 2010 letter with phone calls to the Pansini & Mezrow law offices on September 27, September 28, September 29, September 30, October 1, and October 4. Neither Mr. Kowalski nor Mr. Pansini returned any of these phone calls.

16. On October 4, 2010, [Attorney Deal] sent another letter to Mr. Kowalski, advising him that [Attorney Deal] had learned of the communications with Mr. Lehman and putting him on notice that [BBK, Inc.'s] insurance carrier had reserved their rights in this matter due to late notice and the prejudice suffered by the entry of a default judgment. [Attorney Deal] once again requested that either Mr. Kowlaski or Mr. Pansini call [Attorney Deal] to discuss this matter 'as soon as possible.'

17. On October 5, 2010, [Attorney Deal] received a phone call from Mr. Pansini's partner, Steve Mezrow. Mr. Mezrow advised that he was calling at the request of Mr. Pansini, who was engaged in another trial. He indicated that he had no authority to stipulate to vacate the default judgment and then said that his partner may be willing to do so in return for an agreement to place the case into binding arbitration. [Attorney Deal] advised Mr. Mezrow that at this point [he] was just seeking a response to [his] inquiry as to whether

or not the plaintiffs [were] willing to stipulate to vacate the default judgment. He said that he would have Mr. Pansini get back to [him]. To date, [Attorney Deal] ha[s] not heard from Mr. Pansini and still do[es] not know his position with regard to vacating the default judgment.

BBK, Inc.'s Petition to Open the Default Judgment filed 10/8/10 at 2–4.

Further, in its accompanying memorandum of law, BBK, Inc. continued to deny serving Mr. Siuma alcohol while he was visibly intoxicated. Additionally, BBK, Inc. averred, in relevant part:

[BBK, Inc.] presented plaintiffs' Complaint to David Lehman, Esquire with the understanding that he would assist them in this matter. Mr. Lehman corresponded and/or spoke with plaintiffs' counsel regarding his role in the case. Mr. Lehman requested and counsel for plaintiff agreed not to file a default judgment while he sought to obtain insurance coverage for [BBK, Inc.]. On or about August 25, 2010, plaintiffs filed a Praecipe for Entry of Default Judgment.

On September 14, 2010, twenty days after the Entry of Default Judgment, counsel for plaintiffs faxed to Carmen Corp., the insurance broker for [BBK, Inc.], a filed copy of the Complaint in this matter. Counsel did not advise the Carmen Corp. that a default judgment had been entered. On or about September 15, 2010, the Carmen Corp. forwarded the plaintiffs' Complaint to RCA Insurance Group, the third party administrator for State National Insurance Company, Inc., the insurance company for [BBK, Inc.]. Thereafter, RCA Insurance Group assigned the defense of [BBK, Inc.] to [Attorney Deal].

BBK, Inc.'s Memorandum of Law In Support of Petition for Relief From Judgment of Default filed 10/8/10 at 2. BBK, Inc.

reiterated the action Attorney Deal took after September 23, 2010, when he opened BBK, Inc.'s file and specifically indicated:

The reasons for the delay in taking action on this petition and the plaintiffs' Complaint are indeed legitimate and reasonable. [BBK, Inc.] took plaintiffs' Complaint to an attorney. The attorney engaged in discussions with plaintiffs' counsel while making efforts to secure insurance coverage for [BBK, Inc.]. Mr. Lehman had a verbal agreement with plaintiffs' counsel that he would not take a default judgment. While Mr. Lehman was still making efforts to secure coverage, the plaintiffs took the default judgment. It was not until that time that counsel or plaintiffs put [BBK, Inc.'s] insurance carrier on notice of the subject claim by sending a copy of the Complaint, without the filed default judgment, to [BBK, Inc.'s] insurance broker. [BBK, Inc.] acted reasonable in retaining counsel to assist in this matter. Unfortunately, the actions of its counsel were not enough to prevent the entry of default judgment.

BBK, Inc.'s Memorandum of Law In Support of Petition for Relief From Judgment of Default filed 10/8/10 at 5.

BBK, Inc. also filed on October 8, 2010 an answer, with new matter and a cross-claim, to the Kellys' civil complaint. The Kellys filed an answer to the new matter and cross-claim, as well as an answer and supporting memorandum of law to BBK, Inc.'s petition to open the default judgment. In their answer, the Kellys averred, in relevant part:

In essence, the only thing that [BBK, Inc.] addresses in its petition is the time frame and delay from the date that the Default Judgment was entered to the time when it filed the instant Petition.

At no point does [BBK, Inc.] explain inactivity in delay in failing to file an answer to Plaintiffs' Complaint[.]

\*      \*      \*

The evidence of record shows nothing but deleterious behavior and a general denial of Plaintiffs' claims with no facts of record which develop reasonable excuse or a meritorious defense.

\*      \*      \*

[BBK, Inc.] demonstrates no facts showing it did anything but sit on its hands for close to a year, doing nothing. [BBK, Inc.] was given every opportunity to answer Plaintiffs' Complaint and defend itself. The time for discovery came and went. The time for expert reports came and went. A settlement conference date was set. A trial date was looming on the horizon. Nothing spurred [BBK, Inc.] or its insurance carrier into action. [BBK, Inc.] did nothing. Its deleterious actions should not be rewarded.

[The Kellys'] Response to [BBK, Inc.'s] Petition for Relief from Judgment of Default of [BBK, Inc.] filed 11/1/10 at 2–4.

On December 7, 2010, the trial court held oral argument on BBK, Inc.'s petition to open the default judgment. At the hearing, with regard to the period prior to the entry of default judgment, Attorney Deal argued that, his client, Mr. Bell, who is the owner of BBK, Inc., presented the complaint to an attorney. N.T. 12/7/10 at 4. He further argued:

[Mr. Bell's] understanding was that the attorney was either going to be representing him in the matter or doing what needed to be done to get him coverage in the matter. Lo and behold, there was nothing done.

Again, as I understand this and as indicated in the moving papers, there have been some discussions between this attorney, Mr. Lehman, and plaintiffs' office about whether or not a default would be taken. Ultimately, the default was taken.

\*      \*      \*

The main issue here, Your Honor, for Your Honor to decide is the first issue I addressed, which is whether or not there's a reasonable excuse for the delay, and I submit to Your Honor there is a reasonable excuse.

The excuse is that my client took the complaint, took it to an attorney, was under the understanding that the attorney was taking action, was under the understanding that the attorney had communicated with plaintiffs' counsel, and the next thing he knows is that there's been a default entered in the case through *no fault of his own.*

N.T. 12/7/10 at 4–5, 10.

Attorney Deal also argued BBK, Inc. filed its petition *to* open the default judgment in a timely manner, particularly in light of the actions taken by Mr. Deal after the case was assigned to him, and BBK, Inc. has a meritorious defense. N.T. 12/7/10 at 5–9.

The Kellys argued, *inter alia,* that although BBK, Inc. was provided with notice of all documents, they did nothing with regard to answering the complaint in a timely manner. N.T. 12/7/10 at 12. In fact, the Kellys argued that no one communicated with them until July 23, 2010, when the Kellys' attorney's paralegal received a phone call from Attorney Lehman, who indicated that, although he had not formally entered his appearance, he would be representing BBK, Inc. N.T. 12/7/10 at 18. Attorney Lehman informed the paralegal that he and the insurance carrier were aware of the Kellys' complaint against BBK, Inc., and on July 22, 2010, BBK, Inc. had made a claim with its

insurance carrier. N.T. 12/7/10 at 18–19. The Kellys argued that BBK, Inc. made no excuse for why it had not communicated with the Kellys' attorney prior to July 23, 2010, and offered no excuse for why it did not answer the Kellys' complaint prior to the entry of default judgment. N.T. 12/7/10 at 18–20. Additionally, the Kellys offered evidence at the hearing that, on July 26, 2010, Attorney Kowalski sent a copy of the complaint to and spoke with a broker at Carmen Corporation. N.T. 12/7/10 at 19–20.

■ By order entered on December 9, 2010, the trial court denied BBK, Inc.'s petition to open the default judgment. On December 23, 2010, BBK, Inc. filed a motion for reconsideration, and on January 3, 2011, the Kellys filed an answer in opposition to BBK, Inc.'s motion for reconsideration. On January 4, 2011, BBK, Inc. filed a timely notice of appeal to this Court from the trial court's December 9, 2010 order, which denied its petition to open the default judgment,[4] and by order entered on January 26, 2011, the trial court purported to deny BBK, Inc.'s motion for reconsideration.[5] On February 8, 2011, the trial court directed BBK, Inc. to file a Pa.R.A.P. 1925(b) statement, and BBK, Inc. timely complied on February 23, 2011. On May 24, 2011, the trial court filed a Pa.R.A.P. 1925(a) opinion explaining the reasons it denied BBK, Inc.'s petition to

open the default judgment. Specifically, the trial court concluded, in relevant part:

> BBK, Inc. failed to provide a reasonable explanation or legitimate excuse for its ... delay in answering the complaint. BBK, Inc. did provide an excuse for its delay in filing a petition to open judgment after the entry of the default judgment, but not for the period between when the complaint was filed and the entry of the default judgment.

Trial Court Opinion filed 5/24/11 at 2.

■ On appeal, BBK, Inc. contends that it met the three prongs of the tripartite test necessary for opening a default judgment.[6]

> It is well settled that a petition to open a default judgment is an appeal to the equitable powers of the court, and absent an error of law or a clear, manifest abuse of discretion, it will not be disturbed on appeal. An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will.

*US Bank N.A. v. Mallory*, 982 A.2d 986, 994 (Pa.Super.2009) (*quoting ABG Promotions v. Parkway Publishing, Inc.*, 834 A.2d 613, 615–16 (Pa.Super.2003) (*en

---

4. We note that, pursuant to Pa.R.A.P. 311, regarding interlocutory appeals as of right, "[a]n appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from: (1) *Affecting judgments*. An order refusing to open, vacate or strike off a judgment." Pa.R.A.P. 311(a)(1) (emphasis in original). Moreover, "a party may petition to open a default judgment prior to the assessment of damages[.]" *Boatin v. Miller*, 955 A.2d 424, 426 n. 2 (Pa.Super.2008).

5. A motion for reconsideration does not toll the appeal period. *See PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219 (Pa.Su-

per.2007). Further, "[i]f the trial court fails to grant reconsideration expressly within the prescribed 30 days, it loses the power to act upon both the [motion] and the original order." *Id.* at 226.

6. BBK, Inc. also argues that the equities lie in favor of opening the default judgment. However, the trial court cannot open a default judgment based on the "equities" of the case when the defendant has failed to establish all three of the required criteria. *Seeger v. First Union National Bank*, 836 A.2d 163 (Pa.Super.2003).

*banc* ) (quotations, quotation marks, and citations omitted)).

■ Generally speaking, a default judgment may be opened if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint.[7] *McFarland v. Whitham,* 518 Pa. 496, 544 A.2d 929 (1988); *Seeger v. First Union National Bank,* 836 A.2d 163 (Pa.Super.2003).

■ With regard to the first prong, whether the petition to open was timely filed, we note:

The timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received. The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as timely. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay.

\*       \*       \*

In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. *See Duckson v. Wee Wheelers, Inc.,* 423 Pa.Super. 251, 620 A.2d 1206 (Pa.Super.1993) (one day is timely); *Alba v. Urology Associates of Kingston,* 409 Pa.Super. 406, 598 A.2d 57 (Pa.Super.1991) (fourteen days is timely); *Fink v. General Accident*

*Ins. Co.,* 406 Pa.Super. 294, 594 A.2d 345 (Pa.Super.1991) (period of five days is timely).

*US Bank N.A.,* 982 A.2d at 995 (quotation omitted) (finding eighty-two day delay was not timely). *See Myers v. Wells Fargo Bank, N.A.,* 986 A.2d 171 (Pa.Super.2009) (indicating delay of fourteen days in filing petition to open was timely); *Pappas v. Stefan,* 451 Pa. 354, 304 A.2d 143 (1973) (fifty-five day delay was not prompt).

■ In the present case, the Important Notice of Intent to Enter Default Judgment was mailed via first class mail to BBK, Inc. at its business address on August 5, 2010. Having received no response, the Kellys praeciped for the entry of default judgment on August 25, 2010, and notice thereof was sent on that same date via first class mail to BBK, Inc. at its business address. BBK, Inc.'s petition to open the default judgment was filed forty-four days later on October 8, 2010. Taking into consideration the amount of the delay, i.e., forty-four days, as well as the reasons proffered by BBK, Inc. for the delay in filing its petition to open as discussed *supra,* we conclude the trial court's suggestion that BBK, Inc. timely filed its petition to open the default judgment was generous. *See Flynn v. America West Airlines,* 742 A.2d 695 (Pa.Super.1999) (holding that since America West offered no legitimate explanation as to why the petition to open was not filed until twenty-four days after it received notice thereof, the trial court was generous in its conclusion that the petition to open was promptly filed).

In any event, assuming BBK, Inc.'s petition to open was timely filed, we conclude

---

7.  Where a petition to open is filed within ten days of the entry of judgment and is accompanied by a proposed answer offering a meritorious defense, the court shall open the judgment. *See Estate of Considine v. Wachovia*

*Bank,* 966 A.2d 1148 (Pa.Super.2009). However, in the case *sub judice,* there is no dispute that BBK, Inc. failed to file its petition to open within ten days.

that BBK, Inc. has not demonstrated relief with regard to the second prong, *i.e.*, that it had a justifiable excuse for not filing a timely answer to the Kellys' civil complaint. BBK, Inc. initially argues that the second prong of the tripartite test relates only to the justifiable excuse in failing to file a timely petition to open in response to the entry of default judgment. *See* BBK, Inc.'s Brief at 21. That is, BBK, Inc. argues that it was not required to provide any reason with regard to the approximate ten-month delay in filing an answer to the complaint. *See* BBK, Inc.'s Brief at 21.

However, this Court has held that, with regard to the second prong:

'[W]hether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case. The appellate courts have usually addressed the question of legitimate excuse in the context of an excuse for failure to respond to the original complaint in a timely fashion.' *US Bank N.A.*, 982 A.2d at 995 (quotation marks, quotation and citations omitted).

*Myers*, 986 A.2d at 176. Thus, we disagree with BBK, Inc. that it was not required to provide a legitimate reason with regard to the approximate ten-month delay in filing an answer to the complaint. *See Smith v. Morrell Beer Distributors, Inc.*, 29 A.3d 23 (Pa.Super.2011) (indicating the appellants were required to demonstrate in the second prong a reasonable excuse for failing to file an answer).

In examining the reasons offered by BBK, Inc. for the approximate ten-month delay in filing an answer to the complaint, we agree with the trial court that BBK, Inc. has failed to demonstrate a legitimate excuse for the delay. In its petition to open, supporting memorandum, and at the December 7, 2010, hearing on the motion, BBK, Inc. asserted that it contacted Attorney Lehman to represent its interests; however, the record fails to establish precisely when BBK, Inc. contacted Attorney Lehman. Additionally, the record reveals that Attorney Lehman did not communicate with the Kellys' attorney until July 23, 2010, at which time he informed a paralegal that, although he had not entered his appearance, he would be representing BBK, Inc.'s interests. Attorney Lehman further informed the paralegal that BBK, Inc. had made a claim to its insurance carrier on July 22, 2010. Attorney Lehman offered no excuse as to why he neither contacted the law firm sooner nor filed an answer on BBK, Inc.'s behalf. Still, BBK, Inc. did not file an answer. Therefore, on August 4, 2010, the Kellys served upon BBK, Inc. an Important Notice of Intent to Enter Default Judgment, and then praeciped for the entry of default judgment on August 25, 2010. Thereafter, Attorney Deal, who was retained by the insurance carrier, opened a file on September 23, 2010, discovered the default judgment, and began communicating with the Kellys' attorney. However, an answer was not filed until October 8, 2010, when BBK, Inc. sought to open the default judgment.

Based on the aforementioned, we conclude that BBK, Inc. has failed to offer a legitimate excuse for its inaction. We specifically note that this is not a case where the defendant has proven it was without fault, *see Stephens v. Bartholomew*, 422 Pa. 311, 220 A.2d 617 (1966) (the defendant proved he delivered the complaint to his attorney in timely fashion, but the attorney neglected to read it and take action); nor is it a case where the defendant's legal counsel has provided a reasonable excuse for his or her failure to answer the complaint in a timely manner, *see Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971) (counsel forwarded complaint to defendant's insurance company, but insurance company lost all relevant papers). *See*

*also Flynn,* 742 A.2d at 699 ("[W]here the failure to answer was due to an oversight, an unintentional omission to act, or a mistake of the rights and duties of the appellant, the default judgment may be opened.") (quotation and quotation marks omitted). Additionally, we note that BBK, Inc. is a corporate defendant, which should have in place the means to monitor its legal claims. *See Myers, supra.* Thus, we agree with the trial court that BBK, Inc. failed to establish a reasonable justification for its inactivity and delay in filing an answer to the Kellys' complaint.[8]

With regard to the third prong, the trial court recognized that the prong must be met. *See* Trial Court Opinion filed 5/24/11 at 1. However, in light of its conclusion that BBK, Inc. had not met the second prong, the trial court did not specifically consider whether BBK, Inc. had pleaded a meritorious defense to the allegations contained in the Kellys' complaint. "We conclude that, even assuming [BBK, Inc.] pleaded a meritorious defense, the trial court properly denied [BBK, Inc.'s] petition to open the default judgment." *Myers,* 986 A.2d at 178 (*citing U.S. Bank N.A., supra* (affirming denial of petition to open even though trial court failed to ana-lyze third prong of the meritorious defense since other prong were not met). *See McCoy v. Public Acceptance Corp.,* 451 Pa. 495, 305 A.2d 698 (1973) (indicating all three factors must be met before default judgment may be opened and having concluded the appellant did not adequately explain the failure to answer the complaint, the trial court was justified in refusing to open the judgment)).

For all of the foregoing reasons, we affirm.

Affirmed.

---

8. On appeal, BBK, Inc. avers the trial court should have considered three affidavits, which BBK, Inc. attached to its motion for reconsideration. BBK, Inc. argues the affidavits would have proven that BBK, Inc. "appropriately addressed plaintiffs' claims by seeking the assistance of counsel and notifying [its] insurance broker." BBK, Inc.'s Brief at 32. Additionally, BBK, Inc. avers the affidavits reveal that, contrary to the Kellys' attorney's assertion that he sent a copy of the complaint to the insurance carrier on July 26, 2010, the complaint was not received by the insurance carrier on that date. BBK, Inc.'s Brief at 33. However, we conclude the trial court properly refused to consider the new arguments and evidence, which were presented for the first time in BBK, Inc.'s motion for reconsideration and accompanying affidavits. *See Rabatin v. Allied Glove Corp.,* 24 A.3d 388 (Pa.Super.2011) (issues raised for first time in motion for reconsideration after the entry of summary judgment may not be considered by this Court); *Erie Insurance Exchange v. Larrimore,* 987 A.2d 732 (Pa.Super.2009) (same); *Prince George Center, Inc. v. United States Gypsum Co.,* 704 A.2d 141 (Pa.Super.1997) (indicating the Superior Court has jurisdiction over neither the trial court's denial of a motion for reconsideration nor the issues raised initially in a motion for reconsideration). In any event, we note the affidavits continue to reveal that BBK, Inc. received all legal notices; however, BBK, Inc. took no action until "the summer of 2010," at which time BBK, Inc. believed its attorney/insurance carrier was handling the matter.