## Wade v. Field & Country Meadows of Hershey

300

*Markian Slobodian*, for plaintiffs.
*Herbert Corky Goldstein*, for defendant.
*Kirk Sohonage*, for garnishee.

TURGEON, *J.*, May 23, 2013—The issue presented in this case is whether a judgment creditor can garnish funds the judgment debtor prepaid to an assisted living facility for anticipated future expenses. As set forth below, I find that the prepaid monies are subject to garnishment under the facts presented and accordingly deny the garnishee's petition to strike or open the judgment entered by admission upon a writ of execution.

Procedural and Factual Background

Plaintiffs Jerome and Cheryl Wade, husband and wife, initially brought this action in 2004 against Marjorie and Wendy Field, mother and daughter, to recover damages for breach of contract and in tort. With regard to Marjorie Field (hereinafter "defendant"), who bought and sold jewelry, plaintiffs alleged that she knowingly sold them numerous counterfeit and fake reproduction jewelry pieces over the course of a few years. They alleged as well that she failed to pay them $71,650 on a $100,000 personal loan they had extended to her in December 2000.

On October 24, 2011, just prior to trial, the plaintiffs and defendant Marjorie Field entered into a stipulated judgment for $228,651 in plaintiffs' favor.[1] At the time the

---

1. The case against Wendy Field was tried before a jury and on November 1, 2011, the jury rendered a plaintiffs' verdict of $21,000.

judgment was entered, defendant was 90 years old and allegedly incapacitated due to Alzheimer's. She was then a resident at Country Meadows of Hershey, an assisted care facility where she had been residing since November 29, 2007.

On November 17, 2011, plaintiffs filed a praecipe to enter judgment against defendant upon the stipulated judgment as well as a writ of execution with interrogatories against Country Meadows of Hershey, as garnishee, directing the sheriff to attach property of the defendant in Country Meadows' possession.[2] Following service of the writ and interrogatories, Vincent Mizak, a Country Meadows' senior vice president of finance, answered the interrogatories on Country Meadows' behalf. He identified defendant's "prepayment" funds as "maintained in a Country Meadows bank account" and that "the total amount of prepayment being held for Ms. Field amounts to $50,604.36." (Joint exbt. 1 (Mizak dep. exbt. 3)) He explained that the funds had been provided by defendant to Country Meadows under her Resident Agreement with Country Meadows, which allows a resident to pay in advance towards anticipated future services. (*Id.*) Mizak explained that "[t]he residual value [prepayment] is maintained in a Country Meadows bank account until the resident moves from the facility at which time the remaining balance is refunded." (*Id.*) Mizak also attached copies of two Citizens Bank Official Checks (i.e. teller's checks) which he identified as the source of the prepayment funds.

---

2. Plaintiffs also filed a writ of execution with interrogatories against Citizens Bank as garnishee on December 8 and 9, 2011. Plaintiffs sought to garnish monies from two accounts defendant had with the bank.

Based upon Mizak's responses to the Interrogatories, which plaintiffs considered an "admission," judgment was entered January 6, 2012 against Country Meadows as garnishee for $50,604.36. On January 17, 2012, defendant filed an application for stay and to set aside plaintiffs' writ of execution, as against garnishee Country Meadows. Plaintiffs filed a timely response including an assertion that the two prepayments made to Country Meadows were a deliberate attempt to hide or shield defendant's assets from plaintiffs. Following a conference with the parties, I denied defendant's application for stay, June 1, 2012.[3] Neither defendant nor Country Meadows filed an appeal from the entry of this order.

On July 2, 2012, Country Meadows filed a petition to strike or open the January 6, 2012 judgment entered against it as garnishee. At the hearing on the petition, the parties submitted into the record Mizak's deposition as well as other exhibits. The relevant evidence submitted included the following:

Defendant's resident agreement with Country Meadows permitted prepayment of services, as follows:

*Payments in Advance.* [Country Meadows] has established a special program for residents who pay in advance, one time each year, their entire Customized Service Rate for a twelve-month period. If You wish to participate, [Country Meadows] agrees to pay You six percent (6%) simple interest on the unearned balance

---

3. As part of the same order, I granted defendant's application for stay regarding plaintiffs' writ of execution as against garnishee Citizens Bank, on the basis that the monies held by the bank were exempt from garnishment because they consisted of Social Security and pension payments.

of the year's customized Service Rate. Interest shall be credited monthly to Your account or, if our Agreement is terminated, principal and interest shall be paid at that time....

(Joint exbt. 2 (Application for stay, exbt. A (¶ E.2.12))) The resident agreement also included provisions in two other clauses that provided any unapplied (pre)payments made to Country Meadows would be refunded upon the resident's decision to terminate the agreement and vacate the premises, or upon the resident's death. (*Id.* exbt. A (¶G.3 and G.4))

Mizak testified at his deposition that Country Meadows provided monthly account statements to all residents, including defendant. These statements clearly identified the amount of any prepayment as a credit to the resident's account, monthly interest earned on the prepayment and charges incurred. (Joint exbt. 1 (Mizak dep. at 33, 37 and dep. exbts. 2, 4)) All prepaid monies received by Country Meadows were placed in Country Meadows' corporate operating account. (*Id.* (Mizak dep. at 29-30 and dep. exbts. 1, 2))

In June or July 2012, defendant's son applied for aid from Country Meadows on his mother's behalf seeking a reduced monthly fee. In the application, he indicated he had made the prepayment to Country Meadows on his mother's behalf, explaining as follows: "when my mother's lawsuit was ended I sold he[r] stock and prepaid total balance to Country Meadows also prepaid all her bank balances to Country Meadows ..." (*Id.* (Mizak dep. exbt. 4))

With regard to the two prepayments, the first was

made on September 27, 2011, just a few weeks before defendant's attorney agreed to the entry of the stipulated judgment on defendant's behalf in the underlying lawsuit, for $228,651. This first payment received was a Citizens Bank teller's check for $43,175.37. According to Mizak, Country Meadows designated $28,318 as prepayment and the remainder applied to charges already incurred by defendant. (*Id.* (Mizak dep. at 21, 24 and dep. exbt. 1)) On November 7, 2011, just two weeks following entry of the stipulated judgment, Country Meadows received a second Citizens Bank teller's check for $31,432.73 on defendant's behalf. Country Meadows designated the entire amount of the second check as a prepayment since defendant was current on her payments. (*Id.* (Mizak dep. at 27-28 and dep. exbt. 2)) As of the date of the second check, these were the only prepayments defendant had ever made to Country Meadows since beginning her residency there in November 2007. (*Id.* (Mizak dep. at 29))

## Legal Discussion

The issues presented by garnishee Country Meadows in its petition strike or open judgment, as supplemented at oral argument, are that (1) the judgment by admission should be stricken because the face of the record does not clearly show that Country Meadows admitted in its answers to interrogatories that it possessed property belonging to defendant (Petition to strike ¶¶ 7-18); (2) the judgment should be opened because the record offered into evidence does not show that the prepaid monies were defendant's property but instead belonged to Country Meadows (Petition to open ¶¶ 20-21 and N.T. 11/13/12 at 6-9); and (3) some portion of the funds used to make the prepayments may be protected (exempt) from

garnishment. (N.T. 11/13/12 at 7)

Garnishment is a remedy created to enable a judgment creditor to reach assets of his debtor held by a third party. *Sevast v. Kakouras*, 841 A.2d 1062, 1066 (Pa. Super. 2003), *reversed on other grounds*, 915 A.2d 1147 (Pa. 2007); *Brown v. Candelora*, 708 A.2d 104, 107 (Pa. Super. 1998). "[A]ll personal property and salable real estate owned by a judgment debtor is subject to execution unless specifically exempted by statute." *Krysmalski by Krysmalski v. Tarasovich*, 622 A.2d 298, 310 n.7 (Pa. Super. 1993) (citations omitted).

The procedure for garnishment actions in Pennsylvania is set forth in the Rules of Civil Procedure. Pa.R.C.P. 3101-3159. For the purposes of garnishment practice, under the facts of this action, "[a]ny person may be a garnishee and shall be deemed to have possession of property of the defendant" provided he or she "has property of the defendant in his custody, possession or control ...." Pa.R.C.P. 3101(b).[4]

A garnishment action is initiated when a plaintiff files a praecipe for writ of execution to be served upon the

---

4. "Garnishee" is fully defined under Rule 3101, as follows:
Rule 3101. Definitions. Garnishee. Scope
(b) Any person may be a garnishee and shall be deemed to have possession of property of the defendant if the person
(1) owes a debt to the defendant;
(2) has property of the defendant in his or her custody, possession or control;
*Note:* For limitation on the power to attach tangible personal property, *see* Rule 3108(a).
(3) holds as fiduciary property in which the defendant has an interest;
(4) holds the legal title to property of the defendant whether or not in fraud of creditors; or
(5) owns or possesses real property subject to a mortgage, judgment or other lien in which defendant has an interest.
Pa.R.C.P. 3101(b).

garnishee in the county in which the judgment was entered. Pa.R.C.P. 3103(a). Service of the writ upon the garnishee attaches all property of the judgment defendant that is in the possession of the garnishee and that is otherwise attachable under Pennsylvania law. Pa.R.C.P. 3111(b); *see Dietrich Industries, Inc. v. Abrams*, 455 A.2d 119, 123 (Pa. Super. 1982). Proper service of the writ of execution upon the garnishee effects "an equitable assignment" of the judgment defendant's property held by the garnishee for the benefit of the judgment creditor. *See, Royal Bank of Pennsylvania v. Selig*, 644 A.2d 741, 744 (Pa. Super. 1994) (citation omitted). The garnishee is enjoined from paying any debt to or for the account of the judgment defendant and from delivering any attached property of the judgment defendant until the judgment against the judgment defendant is satisfied or the writ is discontinued or terminated. Pa.R.C.P. 3111(c).

Following service of the writ, the plaintiff may file and serve interrogatories upon the garnishee that frame the issues to be litigated. Pa.R.C.P. 3144. "The procedure between the plaintiff and the garnishee shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in a civil action." Pa.R.C.P. 3145(a). If the garnishee responds to interrogatories by admit ting to possessing property of the judgment defendant which is attachable under state law then the court "shall ... enter judgment for the value of the property of the defendant in the hands of the garnishee ..." up to the amount of the judgment plus interest and costs. Pa.R.C.P. 3146(a)(1). Alternatively, the garnishee may raise in his or her answer to the interrogatories any defense or counterclaim that

it may have against the judgment defendant, including evidence of set-off or of other equities that he or she might have made if sued by the original creditor. Pa.R.C.P. 3145(b)(2).

The plaintiff in an attachment proceeding "stands in the shoes of the defendant as to any claim he has against the garnishee." *Appel Vending Co. v. 1601 Corp.*, 203 A.2d 812, 813 (Pa. Super. 1964); *see also, Sevast v. Kakouras* at 1067 (a judgment creditor essentially stands in the shoes of his debtor with regard to the debt owed by the garnishee). However, "it is clear that a judgment creditor's rights extend only so far as do the rights of his debtor[;] … an attaching creditor necessarily claims through his debtor, and in the absence of fraud, … no greater right than was vested in the latter at the time the writ was served on the garnishee." *First Pennsylvania Banking & Trust Co. v. Liberati*, 422 A.2d 1074, 1077 (Pa. Super. 1980) (citations omitted).

1. Petition to Strike

As recited above, upon service of its writ of execution upon Country Meadows, plaintiffs established an equitable assignment of all of defendant's monies held for the defendant by Country Meadows. Plaintiffs later obtained a judgment by admission against Country Meadows January 6, 2012, based upon the answers to interrogatories provided by Country Meadows's representative Mizak, who purportedly admitted Country Meadows possessed defendant's prepaid funds.

Rule 3146 permits the prothonotary, upon a plaintiff's praecipe, to enter judgment "against the garnishee for the property of the defendant admitted in the answer to

interrogatories to be in the garnishee's possession ...." Pa.R.C.P. 3146(b). The admissions of a garnishee, made through answers to interrogatories, support the entry of judgment "only in a clear case, where there is a distinct admission of liability by the garnishee to the defendant." *Ruehl v. Maxwell Steel Co., Inc.*, 474 A.2d 1162, 1163-64 (Pa. Super. 1984) (citation omitted). Courts and commentators have emphasized that judgment on admission "cannot be entered unless some part of the plaintiff's claim is 'unequivocally and unqualifiedly admitted to be due by the defendant's answer.'" *Id.* (citation omitted). A petition to strike is properly granted for defects appearing on the face of the record, including where a judgment against a garnishee is improperly entered on the basis of admissions in the garnishee's answers to interrogatories. *Id.* at 1163 (citations omitted).

Country Meadows claims that a close reading of Mizak's answers fails to reveal he made the requisite distinct, unambiguous admission that Country Meadows possessed or controlled defendant's funds such that Country Meadows could be legally considered a garnishee. It argues that as such, the entry of the judgment upon the admission by the prothonotary is a defect upon the face of the record. Country Meadows asserts in support that in Mizak's answer to the interrogatories, he indicates that after receiving the Citizens Bank's teller's checks, Country Meadows deposited these funds into its corporate account and not in any individual account identifying it as defendant's funds. (N.T. 6)

As recited above, for the purposes of garnishment practice, defendant is a garnishee if it maintains custody, possession or control of the defendant's property. Pa.R.C.P.

3101(b). Country Meadows was properly considered a garnishee from the face of the record. Specifically, Country Meadows admitted that the funds were "maintained in [its] bank account." (Joint exbt. 1 (Mizak dep. exbt. 3)) This was a clear expression in the answers to interrogatories that Country Meadows maintained "custody, possession or control" over the property in question. Country Meadows further admitted that "the total amount of prepayment *being held for Ms. Field* amounts to $50,604.36." (*Id.* (emphasis added)). This is a clear and unequivocal admission by Country Meadows that the property it maintained was that of the defendant.

Because there was no defect upon the face of the record, the judgment by admission was properly entered. In any event, even were this court to agree with Country Meadows that Mizak's answer lacked the required clarity upon which to enter judgment by admission, the evidence presented, beyond the face of the record, reveals that the judgment against garnishee Country Meadows was warranted upon the merits, as is discussed in the next section.

2. Petition to Open — Whether the Prepaid Funds are Defendant's Property

Country Meadows alternatively asserts that the judgment should be opened, claiming that the prepaid funds held in Country Meadows' corporate account belonged to it and not to defendant. Country Meadows argument is in essence that it is not properly considered a garnishee under the law because it did not hold money of the defendant. This argument is similar to that made above but relies upon the entire record.

I initially note that this court has been unable to identify an appellate case addressing the standard for opening a judgment by admission against a garnishee. Nevertheless, this situation seems fairly analogous to a petition by a judgment debtor seeking to open a judgment entered by confession. In that situation the petitioner is entitled to relief if he or she acts promptly in filing the petition and alleges a meritorious defense. *Haggerty v. Fetner*, 481 A.2d 641, 644-45 (1984).

With regard to the first requirement, the law does not establish a specific time period within which a petition to open must be filed to qualify as timely; instead, the court must consider the length of time between notice of the entry of the judgment and the reason for the delay in filing the petition to open. *Kelly v. Siuma*, 34 A.3d 86, 92 (Pa. Super. 2011) *alloc. denied*, 42 A.3d 294 (Pa. 2012). The timeliness of a petition to open a judgment is measured from the date that notice of the judgment is received. *Hutchison v. Hutchison*, 422 A.2d 501, 504 (Pa. 1980); *Kelly v. Siuma, supra*. Generally, the appellate courts have found a filing to be prompt where the period of delay has normally been less than one month. *Kelly v. Siuma, supra*. (citations omitted). Where the delay is unexplained, even short delays will be considered untimely. *Gravely v. Gaffney*, 437 A.2d 1041, 1043 (Pa. Commw. 1981) (citations omitted).

Here, judgment was entered against Country Meadows January 6, 2012. There is no suggestion in the record that Country Meadows was not timely served with the judgment. Country Meadows did not file its petition to open judgment until July 2, 2012, almost six months later. A significant portion of the delay is reasonably excused.

Specifically, defendant's application for stay and to set aside plaintiffs' writ of execution (as against garnishee Country Meadows) was pending between January 17 and June 1, 2012. That period is excludable because a resolution of that claim in defendant's favor would have resolved the action in Country Meadows' favor as well. Excluding that time period, Country Meadows' delay was still approximately forty days. Up to thirty of these forty days is further excusable because Country Meadows was not included on the distribution and presumably failed to receive timely notice of this court's June 1, 2012 order denying defendant's application for stay and to set aside plaintiff's writ of execution. Country Meadows eventually filed its petition to strike or Open on July 2, 2012. I thus find under the facts presented that Country Meadows' filing was prompt as its unexplained delay was less than thirty days. *Kelly v. Siuma, supra.*

The next issue is whether petitioner has asserted a meritorious defense. A petitioner seeking to open a judgment bears the burden of producing sufficient evidence to substantiate its alleged defenses. *Haggerty v. Fetner* at 647. As recited above, defendant is a garnishee if it maintains custody, possession or control of the defendant's property. Pa.R.C.P. 3101(b). Country Meadows' chief argument is that the evidence it has presented shows the prepayment is not defendant's property at all, but in fact belongs to Country Meadows. Country Meadows does not appear to dispute under this claim that it maintained custody, possession and control of the prepaid funds.

Country Meadows asserts that defendant's prepayments were a relinquishment by defendant of any ownership or control over those monies. It stresses that the money was

placed in a Country Meadows' operating account, not in any individual account identifying it as defendant's money and that she could never withdraw this money. (*See* N.T. 6-8) Country Meadows further argues that under the Resident Agreement, it had no duty to reimburse defendant or to allow her to control those funds, and that except upon her death or discharge from the Country Meadows facility, the funds could not be returned. I disagree.

The record reveals that defendant's prepayment held by Country Meadows is defendant's property. Country Meadows' corporate records reflect that it holds $50,604.36 which are identified as defendant's prepaid funds and which are further reflected in account statements Country Meadows provides to defendant as a credit to her. (Joint exbt. 1 (Mizak dep. at 29-30, 36 and dep. exbts. 1, 2, 4)) Country Meadows also paid defendant monthly interest on the prepayments, evidencing a clear intent by Country Meadows that it considered the prepaid funds as belonging to the defendant. Significantly, under the resident agreement, Country Meadows is required to refund prepaid monies to the defendant upon her removal from its facility, or to her estate upon her death. (Joint exbt. 2 (Application for stay, exbt. A (¶¶ E.2.12, G.3, G.4))) The prepaid funds are additionally earmarked only for future charges to be incurred by the defendant; Country Meadows has no right to deduct from defendant's account against her prepaid funds except insofar as defendant incurs charges. Thus, only upon the deduction of these funds for charges incurred does the money became Country Meadows' property.

Additionally, under the resident agreement defendant retained an explicit mechanism to recover prepaid funds

which was that upon her termination of the resident agreement both principal and interest would be returned to her. (Joint exbt. 2 (Application for stay, exbt. A (¶ E.2.12))) While there is no indication defendant (or her guardian) had or have any intention of terminating the resident agreement and obtaining a return of prepaid funds, that is not required for a determination that the funds are defendant's property. It is the right to access the funds which is determinative.[5] Plaintiffs, which stand in the shoes of the defendant as to any claims the defendant may have as against the garnishee, would have this same right of termination under the Resident Agreement and return of principal and interest. *See, Appel Vending Co. v. 1601 Corp., supra.*

Because the record establishes that the prepayment held by Country Meadows on the defendant's behalf is the "property of the defendant" under Country Meadows' "custody, possession or control," Country Meadows is a garnishee under the law. Pa.R.C.P. 3101(b)(2). As such, Country Meadows has failed to assert a meritorious defense and its petition to open judgment must be denied under this claim.

---

5. Country Meadows also suggests that under the resident agreement the defendant was prohibited from ever withdrawing prepaid funds from Country Meadows except upon termination of the agreement. (N.T. 6-7) This claim is not supported by the resident agreement. The resident agreement does not expressly limit the circumstances under which a resident may obtain a refund of advance payments but merely provides that where there is a termination of the agreement (or death by the resident), then the prepayment will be refunded. (Joint exbt. 2 (application for stay, exbt. A (¶ E.2.12, G.3, G.4))) Since the resident agreement is otherwise silent, a resident could legitimately argue that he or she retains the right to a refund of some portion or all of his or her prepaid funds upon request, while still remaining a resident (assuming the resident is otherwise current on his or her account).

3. Petition to Open — Exemption

Defendant's final argument, raised at oral argument, is that some portion of the funds used to make the prepayments to Country Meadows probably included Social Security and pension income which are exempt from garnishment. (N.T. 7) Pennsylvania law renders all property owned by the judgment debtor subject to execution, unless specifically exempted by statute. *Krysmalski by Krysmalski v. Tarasovich, supra.*; *see* 42 Pa.C.S.A. §§ 8121-8128 and Pa.R.C.P. 3123.1 Note (listing state and federal exemptions). Social Security benefits are exempt from garnishment under federal law and pension benefits are generally exempt as well. 42 U.S.C. § 407 and 42 Pa.C.S.A. § 8124(b).

In this case, however, Country Meadows has failed to provide sufficient evidence that the source of any prepayments made to Country Meadows were from exempt funds. The only evidence supplied was that the funds used to make the prepayments were generated after defendant's son sold her stock and emptied out her bank accounts. (Joint exbt. 1 (Mizak dep. exbt. 4)). Stock sale proceeds would have been fully attachable and subject to garnishment. To the extent bank account monies may have been used to partially fund the prepayments to Country Meadows, it is possible that those monies could have included exempt funds inasmuch as defendant's Social Security and pension benefits were regularly deposited in her bank accounts. However, Country Meadows has provided no evidence tracing any portion the $50,604.36 prepayment funds held by Country Meadows for defendant as having come from allegedly exempt funds initially

deposited in defendant's bank accounts.[6]

Because the law does not provide any statutory exemption for the type of payments made by defendant here, her petition to open judgment on this claim must be denied.[7]

## ORDER

And now, this 23rd day of May, 2013, the petition to strike or open the judgment entered by admission January 6, 2012, filed by garnishee Country Meadows, is hereby denied.

---

6. To the extent that defendant's existing Social Security and pension income has been deposited into her Citizens Bank accounts, those monies have been protected from garnishment, to the extent provided by the law, as directed in my June 1, 2012 order. See Pa.R.C.P. 3111.1(1).

7. While this court is not unsympathetic to the argument that a statutory exemption should be extended to prepayments made for services related to the support of the elderly, that issue is one properly left to the Legislature.