J-S88003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| A.G., | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellee | |
| v. | |
| M.A., | |
| Appellant | No. 1976 EDA 2016 |

Appeal from the Order Dated May 27, 2016
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 2013-006410

BEFORE:  OLSON, RANSOM AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 14, 2017**

Appellant, M.A. (hereinafter "Mother") appeals from a final custody order entered on May 27, 2016.  We affirm.

On June 27, 2013, A.G. (hereinafter "Father") filed the initial complaint for child custody in the Court of Common Pleas of Delaware County.  Within the complaint, Father sought partial legal and physical custody of the parties' minor child, K.A. (hereinafter "Child"), who was born in September 2012.  Father's Complaint for Custody, 6/27/13, at ¶¶ 1-15.  On October 28, 2013, following a hearing before a master, the trial court entered a temporary custody order, awarding the parties joint legal custody and partial physical custody over Child.  Temporary Custody Order, 10/28/13, at 1.

In the ensuing year, the parties filed numerous contempt petitions and the Delaware County Court of Common Pleas held numerous hearings on the

_____

*Retired Senior Judge assigned to the Superior Court.

contempt petitions and the underlying custody dispute. On March 27, 2015, the trial court entered a "final custody order" in the matter, awarding shared legal and physical custody on a week-on, week-off basis.

On June 9, 2015, Father filed, in the Court of Common Pleas of Delaware County, a petition to modify the custody order and grant him primary physical custody of Child. Father alleged that modification was required because Mother "behave[s] in a manner which illustrates her fundamental inability and outright refusal to comply with th[e trial c]ourt's directives." Father's Petition to Modify Custody, 6/9/15, at ¶ 11. The trial court scheduled a hearing on Father's modification petition for August 3, 2015. *See* Docket Sheet, 6/12/15.

On July 10, 2015, Father filed a petition for emergency relief in the Court of Common Pleas of Delaware County. In the petition, Father alleged that Mother falsely accused him of sexually abusing Child and that Mother lodged the false report with the Philadelphia Department of Human Services (hereinafter "DHS"). Father's Petition for Emergency Relief, 7/10/15, at 2. Father claimed that, as a result of the false report, DHS notified Father that "any and all custodial time with [Child] was suspended for the foreseeable future pending the outcome of the investigation." *Id.* Father requested that the trial court "enter an order which prohibits [Mother] from leaving the jurisdiction of this court . . . and enjoins [Mother] from making further untrue statements." *Id.* at "Wherefore" Clause.

The trial court held a hearing on Father's emergency petition and, on July 20, 2015, entered an order finding that: Father currently resides in Philadelphia; Mother currently resides in a Philadelphia women's shelter; the trial court "has no confidence that Mother will cooperate in co-parenting [Child], nor comply with the existing custody order;" and, for the "immediate safety of [] Child . . . it is in the [Child's] best interest[] . . . that she reside temporarily on a primary basis with Father." Trial Court Order, 7/20/15, at 1-2 (some internal capitalization omitted). The trial court ordered that Father have temporary primary physical custody of Child "until a review hearing on September 18, 2015[,] or as further modified by court order." *Id.* at ¶ 10 (some internal capitalization omitted). Moreover, with respect to the petition to modify custody, which Father filed on June 9, 2015 and which was scheduled for an August 3, 2015 hearing, the trial court "cancel[ed] the [August 3, 2015] hearing . . . [and] schedul[ed] a trial on [Father's] petition to modify [custody for] Monday, February [1], 2016." N.T. Hearing, 7/16/15, at 123; *see also* Trial Court Order, 7/20/15, at ¶ 21. The trial court later rescheduled the custody modification trial for March 29, 2016. *See* Trial Court Order, 12/17/15, at 1.

On February 19, 2016, Mother filed three petitions in the Delaware County Court of Common Pleas: a petition to modify the custody order; a petition for contempt; and, a petition for change of venue. First, within Mother's petition to modify the custody order, Mother requested that the trial court modify the custody order, so as to provide her with shared legal

and physical custody of Child; Mother also requested that the trial court "preserve and enforce [Mother's] rights under the orders of October 1[,] 2015 and December 4[,] 2015." Mother's Petition to Modify Custody, 2/19/16, at ¶ 33 and "Wherefore" Clause.

Within her petition for change of venue, Mother averred that she lives in Philadelphia, Pennsylvania, Father lives in Bucks County, Pennsylvania, and Child lives with either Mother or Father. As Mother claimed, since she, Father, and Child live outside of Delaware County, the entire custody matter should be transferred from the Delaware County Court of Common Pleas to either the Philadelphia County or the Bucks County Court of Common Pleas. Mother's Petition for Change of Venue, 2/19/16, at 1-2.

Finally, within Mother's petition for contempt, Mother requested that the trial court find Father in contempt of court for: missing a scheduled child exchange; moving his address without court authorization; denying Mother visitation on certain occasions and holidays; blocking Mother's telephone calls to Child; taking Child to the doctor without Mother's knowledge; refusing to "list Mother's information on any childcare forms;" "ignor[ing] Mother's requests for co-parent counseling;" and, "block[ing] Mother's attempts to enroll [] Child in mental healthcare." Mother's Petition for Contempt, 2/19/16, at ¶¶ 1-30. Mother requested that the trial court "find [Father] in contempt and [] make such as to preserve and enforce [Mother's] rights under the orders of October 1[,] 2015 and December 4[,] 2015." *Id.* at "Wherefore" Clause.

The trial court scheduled Mother's petition for modification of custody for trial on March 29, 2016 – which was the same day that Father's petition for modification was scheduled for trial. *See* Docket Sheet at 2/22/16 Entry. Moreover, on March 10, 2016, the trial court entered two orders: an order holding Mother's petition for contempt in abeyance and an order denying Mother's petition for change of venue. Trial Court Order, 3/10/16, at 1-2.

The trial court held the scheduled hearing on the petitions to modify custody on March 29 and 30, 2016. On May 27, 2016, the trial court entered its "final order of custody," wherein the trial court ordered that: with some exceptions, the parties had joint legal custody over Child; Father had primary physical custody of Child; and, Mother had partial physical custody of Child. Trial Court Order, 5/27/16, at 41-42. Further, on May 27, 2016, the trial court entered an order granting in part and denying in part Mother's petition for contempt. Within the trial court's contempt order, the trial court declared that it found Father in contempt for failing to list Mother on Child's daycare documentation. Trial Court Contempt Order, 5/27/16, at 3. With respect to possible sanctions for this contempt finding, the trial court declared: "this court notes that Mother did not make any request for sanctions for the contempt; as such this court determines that this contempt is granted with no further penalty." *Id.* (internal capitalization and emphasis omitted). The trial court denied the remainder of Mother's contempt petition.

On June 24, 2016, Mother filed a notice of appeal from the trial court's orders. Within her contemporaneously-filed concise statement of errors complained of on appeal, Mother claimed that the trial court erred: in denying her petition for change of venue; in failing to find Father in contempt for "unilaterally moving to Bucks County;" and, in failing to grant "the requested counsel fees in accordance with its finding of Father's contempt." Mother's Concise Statement, 6/24/16, at 1-5. Mother raises two issues on appeal:

> 1. Did the [trial] court err by exercising subject matter jurisdiction under the [Uniform Child Custody Jurisdiction and Enforcement Act] where the requirements for subject matter jurisdiction therein were not satisfied?
>
> 2. If the [trial] court nevertheless had subject matter jurisdiction, did the [trial] court err in its May 27, 2016 order denying Mother's petition for contempt against Father and for refusing to otherwise impose sanctions on Father's other conduct which was ruled to be contemptuous?

Mother's Brief at 5 (some internal capitalization omitted).

As this Court has explained:

> Pennsylvania adopted the [Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter "UCCJEA"), 23 Pa.C.S.A. §§ 5401-5482,] in 2004. The purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigation of custody decisions of other states, and facilitate the enforcement of custody orders of other states. [23 Pa.C.S.A. § 5401 cmt.] While the UCCJEA is applicable to interstate proceedings, our Legislature has determined that its provisions "allocating jurisdiction and functions between and among courts of different states shall also allocate jurisdiction and functions between and among the courts of common pleas of this Commonwealth." 23

- 6 -

Pa.C.S.A. § 5471 [("The provisions of this chapter allocating jurisdiction and functions between and among courts of different states shall also allocate jurisdiction and functions between and among the courts of common pleas of this Commonwealth")].

In order to effectuate this legislative mandate, our [S]upreme [C]ourt has promulgated specific rules for applying the provisions of the UCCJEA to intrastate custody disputes. The rules recognize that all counties within the Commonwealth maintain subject matter jurisdiction of custody disputes. However, Pennsylvania Rule of Civil Procedure 1915.2 governing venue of custody matters defines how and what county may properly exercise that jurisdiction.

*J.K. v. W.L.K.*, 102 A.3d 511, 513-514 (Pa. Super. 2014) (internal footnote omitted).

On appeal, Mother claims that the Court of Common Pleas of Delaware County lacked subject matter jurisdiction to rule on Father's June 9, 2015 petition to modify custody because, at the time Father filed his petition, Mother, Father, and Child all lived in Philadelphia County. This claim fails.

At the outset, as we noted in *J.K.*, we note again the conflation of the concepts of jurisdiction and venue. As the *J.K.* Court stated, "[o]ur [S]upreme [C]ourt explained jurisdiction and venue as follows:"

Frequently, the terms jurisdiction and venue are used interchangeably although in fact they represent distinctly different concepts. Subject matter jurisdiction refers to the competency of a given court to determine controversies of a particular class or kind to which the case presented for its consideration belongs. Venue is the place in which a particular action is to be brought and determined, and is a matter for the convenience of the litigants. Jurisdiction denotes the power of the court whereas venue considers the practicalities to determine the appropriate forum.

- 7 -

***J.K.***, 102 A.3d at 513, *quoting **In re R.L.L.'s Estate***, 409 A.2d 321, 322 n.3 (Pa. 1979).

Moreover, as we held in ***J.K.***, "all counties within the Commonwealth maintain subject matter jurisdiction of custody disputes" and the application of the UCCJEA to **intrastate** custody disputes concern matters of **venue** – not subject matter jurisdiction. Thus, in ***J.K.***, when the father claimed that the Court of Common Pleas of Chester County, Pennsylvania "no longer ha[d] continuing, exclusive venue [under the UCCJEA] because none of the parties currently reside[d] there," and all of the parties had moved to Montgomery County, Pennsylvania, we held that the father was entitled to relief because, under the UCCJEA, "the Chester County Court of Common Pleas [] lost the exclusive, continuing authority **to exercise its venue** over [the] matter." ***See J.K.***, 102 A.3d at 513-516 (emphasis added).

On appeal, Mother claims only that the Court of Common Pleas of Delaware County lacked subject matter jurisdiction to rule on Father's petition to modify custody because, when Father filed his petition to modify, the parties all lived in Philadelphia County. Mother's Brief at 10-15. Yet, since "all counties within the Commonwealth maintain subject matter jurisdiction of custody disputes," Mother's claim on appeal immediately fails. ***J.K.***, 102 A.3d at 514.

Further, since we may not advocate for a party, we may not *sua sponte* consider the independent question of whether the trial court possessed "the exclusive, continuing authority to exercise its venue over

[the] matter." ***Commonwealth v. Spotz***, 716 A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief"); ***Rabatin v. Allied Glove Corp.***, 24 A.3d 388, 398 (Pa. Super. 2011) (the Superior Court "may not act as counsel for an appellant and develop arguments on his behalf"). However, we note that, on February 19, 2016, Mother filed her own petition to modify the custody order in the Court of Common Pleas of Delaware County. Moreover, the trial court's May 27, 2016 order disposed of both Father's and Mother's petition to modify custody. Thus, if Mother properly presented the issue of venue to this Court, we would have held that Mother waived any claim that the trial court lacked "the exclusive, continuing authority to exercise its venue over [the] matter," as Mother filed her own petition to modify the custody order in the Delaware County Court of Common Pleas. ***See J.K.***, 102 A.3d at 514; ***see also Wolf v. Weymers***, 427 A.2d 678, 680-681 (Pa. Super. 1981) ("as the Supreme Court made clear, the question of which county within this state should decide a particular custody case, when that case is properly within the jurisdiction of this Commonwealth, is a venue question. It is settled law that the right to raise the objection of venue **is a mere personal privilege belonging to the defendant which may be waived by that defendant**; and that, unlike the question of subject matter jurisdiction, it is generally held that the court on its own motion may not order a change of venue, nor may it dismiss for improper venue. Therefore, since the defendant in the

present case . . . raised no objection to venue, this issue is not properly before this Court") (emphasis added); Pa.R.C.P. 1915.5 ("[a] party must raise any question of . . . venue . . . by preliminary objection filed within twenty days of service of the pleading to which objection is made").

Next, Mother claims that the trial court erred when it denied, in part, her motion for contempt and when it granted, in part, her motion for contempt but failed to award her attorneys' fees. This claim fails.

As this Court explained, "[t]he refusal of a lower court to enter an order holding someone in contempt may be a 'final order,' but only if the refusal is tantamount to denying to the party requesting the order relief to which that party has a right under an earlier final order." *Schultz v. Schultz*, 70 A.3d 826, 828 (Pa. Super. 2013) (internal emphasis omitted), *quoting* *Commonwealth v. Guardiani*, 310 A.2d 422, 424 (Pa. Super. 1973) (*en banc*). In the case at bar, Mother's claims of contempt all concern matters which were decided "under an earlier final order." *See Schultz*, 70 A.3d at 828. Therefore, we have jurisdiction over this portion of the appeal. However, Mother's claims on appeal fail.

"This Court will reverse a trial court's order denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason." *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the

result of partiality, prejudice, bias or ill will." ***Kelly v. Siuma***, 34 A.3d 86, 91 (Pa. Super. 2011) (internal quotations and citations omitted). Thus, "even where the facts could support an opposite result, . . . we must defer to the trial [court] so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion." ***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

"The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed [] to coerce the defendant into compliance with the court's order, and [] in some instances[,] to compensate the complainant for losses sustained." ***Philadelphia Marine Trade Ass'n v. Int'l Longshoremen's Ass'n***, 140 A.2d 814, 818 (Pa. 1958). "For a person to be found in civil contempt, the moving party must prove that: (1) the contemnor had notice of the specific order or decree that he disobeyed; (2) the act constituting the violation was volitional; and[,] (3) the contemnor acted with wrongful intent." ***Gunther v. Bolus***, 853 A.2d 1014, 1017 (Pa. Super. 2004). "The order alleged to have been violated must be definite, clear, and specific – leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct and is to be strictly construed." ***Id.*** (internal quotations, citations, and emphasis omitted). Moreover, "[i]n proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order." ***MacDougall***, 49 A.3d at 892.

- 11 -

First, Mother claims that the trial court erred when it denied her petition to find Father in contempt of court for "relocating" his residence from Philadelphia to Bucks County, Pennsylvania, without authorization. Mother's Brief at 16. This claim fails.

The Custody Act defines the term "relocation" as: "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322. In this case, the trial court held a hearing on Mother's contempt petition and determined that Father's move did not "significantly impair[] the ability of [Mother] to exercise [her] custodial rights." *See* Trial Court Opinion, 7/22/16, at 60. On appeal, Mother claims only that the trial court's determination was against the weight of the evidence. *See* Mother's Brief at 16. Yet, as the trial court explained, its decision was supported by the facts:

> Although [Mother] avers that it is Father's actions that have severely limited the available options for the parties to share physical custody, th[e trial] court disagrees. Although the lack of available options is unfortunate, both parties work comparable hours at their respective jobs. [The trial] court notes that despite her complaint about the amount of time [] Child spends in daycare due to Father's work schedule, Mother's work schedule would likewise require [] Child to attend daycare for a comparable amount of time, due to her job's location in King of Prussia. Furthermore, [the trial] court notes that since July [] 2015, Father has been the primary physical custodian of [] Child. Father's other child attends school on the same street as [] Child, making it easy and efficient for Father to transport them to and from school. While Mother has valid complaints about the distance of [] Child's daycare from her residence, [the trial] court does not believe it would be in the best interest

- 12 -

of [] Child for her daycare to change based solely on how convenient it is for Mother to avail herself of her custody.

Further, [the trial] court notes that the physical custody arrangement entered in the May 27, 2016 final order of custody also ensures that Mother need not be subjected to the long distance between her residence and [] Child's daycare should she not wish to. In that event, [the trial] court has ordered Father to ensure that [] Child arrives at the 14th District Police Precinct by 6:15 [p.m.], but noted that Mother was free to pick up [] Child before that at [] Child's day care if she is able and willing. Again, [Mother] failed to mention physical custody in her appeal, and as such, [the trial] court assumes she has no challenge to this arrangement which, in [the trial] court's mind, provides her either with an opportunity to pick up [] Child from daycare or have [] Child brought to her to a police station only three blocks away from Mother's residence.

Trial Court Opinion, 6/22/16, at 61-62 (some internal capitalization omitted).

The trial court's well-reasoned decision does not constitute an abuse of discretion. Therefore, Mother's claim on appeal fails.

Finally, Mother claims that the trial court erred in failing to award her attorneys' fees, when the trial court found Father in contempt of court for failing to list Mother as Child's mother, on Child's daycare documentation. Yet, as the trial court correctly explained, Mother did not request attorneys' fees in her contempt petition. Mother's Petition for Contempt, 2/19/16, at "Wherefore" Clause (Mother requested that the trial court "find [Father] in contempt and [] make such as to preserve and enforce [Mother's] rights under the orders of October 1[,] 2015 and December 4[,] 2015"). Further, the trial court determined that sanctions were not appropriate because the

violation was relatively minor and the trial court "was confident [] that Father did not require sanctions in order to comply with [the trial court's] orders in the future." *See* Trial Court Opinion, 6/22/16, at 63.

The trial court's refusal to award attorneys' fees for such a minor instance of non-compliance does not constitute an abuse of discretion. Therefore, Mother's final claim on appeal fails.

Order affirmed.  Jurisdiction relinquished.[1, 2]

_____

[1] In her appellate brief, Mother advised that she sought to withdraw her related appeal from a prior order entered in this case, which was docketed at 41 EDA 2016.  By separate order entered on September 20, 2016, we granted Mother's application to discontinue the appeal at 41 EDA 2016. Order, 9/20/16, at 1.

[2] On January 31, 2017, Mother filed an "application to submit post-submission communication in the form of a recent trial court order acknowledging that there is no subject matter jurisdiction in Delaware County" (hereinafter "Mother's Application").  Within Mother's Application, Mother directs this Court's attention to a January 31, 2017 trial court order, which disposed of yet another contempt petition filed in the case.  The trial court's January 31, 2017 order declares:

> AND NOW, to wit, this 31[st] day of January, 2017 upon consideration of Plaintiff's Petition for Contempt filed on January 27, 2017, based upon the [trial] court's review of the record and the petition, th[e trial] court hereby ORDERS and DECREES that said Petition for Contempt is DENIED without prejudice to refile in Bucks County, Pennsylvania as th[e trial] court no longer retains jurisdiction in this matter as neither party presently resides in Delaware County. Furthermore, th[e trial] court notes that Children and Youth Services of Bucks County [has] recently been involved and therefore th[e trial] court determines that Bucks County is the better forum for this case.

*(Footnote Continued Next Page)*

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017

(Footnote Continued) ———————

Trial Court Order, 1/31/17, at 1 (internal bolding and some internal capitalization omitted).

The trial court's January 31, 2017 order is not currently on appeal and the trial court's declaration that it lacked "jurisdiction" to consider the January 27, 2017 contempt petition does not alter this Court's conclusion in the case at bar. Further, as explained above, while the trial court may not have had "the exclusive, continuing authority to exercise its **venue** over" the January 27, 2017 contempt petition, it undoubtedly had **jurisdiction** to consider the petition. **See J.K.**, 102 A.3d at 516 (emphasis added).